IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

WESLEY S. GRIGSBY, M.D. and CONNIE S. GRIGSBY,

*Plaintiffs*,

v.

EMBRACE SOFTWARE, INC.,

*Defendant*.

CASE NO.: ____________________

**COMPLAINT**

Plaintiffs Wesley S. Grigsby, M.D. and Connie S. Grigsby (each individually a "Plaintiff" and collectively "Plaintiffs"), by and through their counsel of record and pursuant to Federal Rule of Civil Procedure 7, state and aver as follows:

**PARTIES**

1. Plaintiff Wesley S. Grigsby is an individual currently domiciled in North Carolina.

2. Plaintiff Connie S. Grigsby is an individual currently domiciled in Georgia.

3. Defendant Embrace Software, Inc. ("Defendant") is a corporation organized under the laws of Delaware.

4. Defendant's principal place of business is located at 201 E. Kennedy Blvd., Suite 1950, Tampa, Florida 33602.

**JURISDICTION AND VENUE**

5. This Court may exercise subject matter jurisdiction over the claims set forth herein because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

6. This Court may exercise personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and Neb. Rev. Stat. § 25-536 because Defendant "[t]ransact[s] . . . business in" Nebraska.

7. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because "a substantial part of the events or omissions giving rise to the claim" occurred in this judicial district.

**FACTS**[1]

8. Plaintiffs are former majority shareholders and officers of ePOWERDOC, Inc.

9. ePOWERDOC, Inc. was founded in and operated primarily out of Omaha, Nebraska prior to and at the time of the Closing Date (defined in ¶ 11 *infra*).

10. Plaintiff Wesley S. Grigsby, M.D. resided in Omaha, Nebraska until December 2023.

11. On August 5, 2021 ("Closing Date"), Plaintiffs and three other former ePOWERDOC, Inc. minority shareholders ("Minority Sellers" and, collectively with Plaintiffs, the "Sellers") and Defendant executed a Stock Purchase Agreement ("Agreement") whereby Sellers agreed to transfer to Defendant "all of the issued and outstanding shares of capital stock" ("Shares") of ePOWERDOC, Inc. in exchange for certain consideration due both on the Closing Date and after the Closing Date. *See* Agreement pmbl., §§ 2.02, 2.04, 2.05, 2.06, 2.07, 2.08, 2.09.

12. On the Closing Date, Sellers transferred their Shares, in addition to all other deliverables due at closing, to Defendant in fulfillment of their obligations pursuant to §§ 2.02 and 2.03 of the Agreement.

---

[1] Any capitalized terms used in this Complaint and not expressly defined herein have the same meaning as they are defined in the August 5, 2021 Stock Purchase Agreement.

13. On the Closing Date, Defendant, in exchange for Sellers' Shares and other deliverables due at closing, delivered to Sellers consideration due at closing pursuant to § 2.04 of the Agreement.

14. On the Closing Date, Defendant was entitled to and did "withhold an amount equal to the Holdback Amount [i.e., $500,000] from the Overall Consideration due to the Sellers . . . to serve as security to satisfy any Losses of the Buyer under Articles VI and VII" pursuant to § 2.07 of the Agreement.

15. Defendant was obligated to "release[] to Sellers" the full Holdback Amount "less any deductions pursuant to . . . Articles VI and VII of th[e] Agreement" in three six-month installments by the "18-month anniversary of the Closing Date," i.e., February 5, 2023, pursuant to § 2.07 of the Agreement.

16. Pursuant to § 2.07 of the Agreement, the Holdback Amount was to be apportioned upon release as follows: "85% . . . attributed to each of the [Plaintiffs] according to their Pro Rata Share, and 7.5% . . . attributed to each of the [Minority Sellers]."

17. On the Closing Date, Defendant was entitled to and did "withhold an amount equal to the Sales Tax Holdback Amount [i.e., $450,000] from the Overall Consideration due to the Sellers . . . to serve as security for any sales taxes owed by [ePOWERDOC, Inc.] to any Governmental Authority arising out of the sale of any goods or services during the Pre-Closing Tax Period" pursuant to § 2.09(a) of the Agreement.

18. Pursuant to § 2.09(b) of the Agreement, Defendant was obligated to release "[w]ithin 15 business days of the end of each fiscal quarter following the Closing Date[] the Sales Tax Holdback Amount . . . to the Sellers in an amount equal to 95% of the total amount of Unpaid Sales Taxes that [ePOWERDOC, Inc.] is able to (1) collect from its relevant customers during

such fiscal quarter; (2) confirm has already been paid by its relevant Customers; and (3) obtain forgiveness or any reduction in liability pursuant to any VDP . . . or other program sponsored by any relevant Governmental Authority."

19. Pursuant to § 2.09(a) of the Agreement, the Sales Tax Holdback Amount was to be apportioned upon release as follows: "85% . . . attributed to each of the [Plaintiffs] according to their Pro Rata Share, and 7.5% . . . attributed to each of the [Minority Sellers]."

20. Among the other considerations owed to Sellers after the Closing Date are Earn Out Payments calculated pursuant to § 2.08(a) and deliverable to Sellers in accordance with § 2.08(b). *See id.* § 2.08(a)–(b).

21. Specifically, § 2.08(a) provides that Sellers "shall . . . receive . . . additional, deferred [Earn Out Payments] . . . payable by the [Defendant] in accordance with Section 2.08(b) . . . based on achievement by [ePOWERDOC, Inc.] of any ARR Increase during the 24 month period beginning on the Closing Date and ending 24 months after the Closing Date."

22. To date, Defendant has paid Sellers $256,501.95 in Earn Out Payments pursuant to § 2.08(a) of the Agreement.

23. According to the financial reports of Defendant, based on ePOWERDOC, Inc.'s achievement of ARR Increase during the 24-month period beginning on the Closing Date and ending 24 months after the Closing Date, Sellers are entitled to an additional $305,440.05 in Earn Out Payments pursuant to § 2.08(a) of the Agreement.

24. Section 2.08(b), which outlines the timing and manner of Earn Out Payments, provides in full:

> (b) Timing and Manner of Earn Out Payment. If there is any ARR Increase, the [Defendant] shall pay, or cause to be paid, 85% of each Earn Out Payment to the [Plaintiffs] in accordance with their respective Pro Rata Shares and the 7.5% of each Earn Out Payment to each of the [MOU Sellers] within five (5) Business Days

> following the earliest to occur of (w) the twenty-first Business Day after receipt of the Earn Out Report without the Sellers notifying the [Defendant] that it objects to the computation of ARR Increase set forth in such Earn Out Report, (x) five (5) Business Days after the date on which the Sellers shall have given the [Defendant] notice of no objection to the computation of ARR Increase set forth in the Earn Out Report, (y) five (5) Business Days after the date as of which the [Defendant] and the Sellers reach a settlement in accordance with Section 2.08(c), and (z) five (5) Business Days after the date as of which the [Defendant] and the Sellers shall have received the determination of a third party who is qualified and selected jointly by the [Defendant] and the Sellers to serve as the arbitrating accountant ("Arbitrating Accountant") in accordance with Section 2.08(c) (each an "Earn Out Payment Date"). If there is no ARR Increase, the Sellers and the [MOU Sellers] shall not be entitled to the Earn Out Payment. Subject to Article VII, on an Earn Out Payment Date, the [Defendant] shall pay and deliver to each Seller by wire transfer of immediately available funds to the bank account previously designated in writing by such Seller in accordance with each Seller's respective share of the Earn Out Payment, if any, that shall be due pursuant to Section 2.08(a) and this Section 2.08(b). The right of each Seller to receive his share of the Earn Out Payment shall not be transferable, in whole or in part, to any other Person, without the consent of the [Defendant].

25. Section 2.08(b) does not expressly permit Defendant to withhold or delay unilaterally an Earn Out Payment owed to Sellers based on an ARR Increase.

26. Section 7.02 of the Agreement enumerates four circumstances under which Sellers are obligated to "indemnify, severally and not jointly, and hold harmless each of Buyer and its Affiliates" for any Losses arising therefrom.

27. Specifically, § 7.02 exhaustively identifies the following four circumstances where Sellers may be required to indemnify Defendant:

a. Where Defendant incurs Losses arising from "any inaccuracy in or breach of any of the representations or warranties of Sellers or the Company contained in this Agreement or in any certificate or instrument delivered by or on behalf of Seller pursuant to this Agreement (other than in respect of Section 3.23, it being understood that the sole remedy for any such breach thereof shall be pursuant to Article VI), as of the date such representation or warranty was made or as if such representation or warranty was made on and as of the Closing Date (except for representations and warranties that expressly relate to a specified date, the inaccuracy in

or breach of which will be determined with reference to such specified date)";

b. Where Defendant incurs Losses arising from "any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Sellers or the Company pursuant to this Agreement (other than any breach or violation of, or failure to fully perform, any covenant, agreement, undertaking or obligation in Article VI, it being understood that the sole remedy for any such breach, violation or failure shall be pursuant to Article VI)";

c. Where Defendant incurs Losses arising from "any Transaction Expenses of the Company outstanding as of the Closing to the extent not deducted from the Overall Consideration in the determination of the Overall Consideration to Section 2.07"; and

d. Where Defendant incurs Losses arising from "any Indebtedness of the Company outstanding as of the Closing to the extent not deducted from the Overall Consideration in the determination of the Overall Consideration to Section 2.07."

28. Any circumstance(s) causing Defendant to incur Losses that are not (1) enumerated under § 7.02 or (2) not yet realized do not trigger any indemnification obligations for Sellers.

29. In the event Buyer incurs Losses from one or more of the circumstances enumerated in § 7.02, Sellers, as the "Indemnifying Party" per § 7.04 of the Agreement, are *only* required to satisfy "[a]ny Losses payable" to Buyer "[o]nce a Loss is agreed to by the Indemnifying Party or finally adjudicated to be payable pursuant to this Article VII" pursuant to § 7.05(a).

30. Per § 7.05(b) of the Agreement, once the precondition of § 7.05(a) is met—i.e., once "a Loss is agreed to by the Indemnifying Party" or is "finally adjudicated"—only then may any Losses incurred by Defendant arising from one of the four circumstances enumerated in § 7.02 be satisfied "(i) from the Holdback Amount; and (ii) to the extent that such amounts exceed the amounts available to the Buyer in the Holdback Amount, the Earn Out Payments . . . to offset any such amounts; and (to the extent that such amounts exceed the amounts available to the Buyer

from the Holdback Amount and the Earn Out Payments, from the Sellers according to their Indemnification Percentage)."

31. Section 7.05(b) does not expressly permit Defendant to withhold or delay unilaterally, for the purpose of reimbursing a Loss arising from a circumstance enumerated in § 7.02 of the Agreement, (1) an Earn Out Payment owed to Sellers based on an ARR Increase or (2) release of the Holdback Amount since any Loss must be "agreed to by the Indemnifying Party" or "finally adjudicated" pursuant to § 7.05(a).

32. No other provision of the Agreement expressly permits Defendant to withhold or delay unilaterally (1) an Earn Out Payment owed to Sellers based on an ARR Increase or (2) release of the Holdback Amount.

33. On August 9, 2022, Defendant sent Sellers correspondence (1) informing Sellers that Defendant received a notice of "Infringement of CorroHealth, Inc.'s Intellectual Property Rights" ("Notice") from CorroHealth, Inc. and (2) arguing CorroHealth, Inc.'s Notice "is an indemnifiable Loss under Article VII of the [] Agreement" and, as such, Defendant "is entitled under Section 7.05(b) of the [] Agreement to satisfy any losses through the offset of amounts payable from the Holdback Amount, from any Earn Out Payments under the Purchase Agreement."

34. Defendant also represented in its August 9, 2022 correspondence to Sellers that "[w]hile the actual cost of defending against a Third Party Claim from CorroHealth . . . is unknowable at this time, the Buyer estimates that reasonable exposure to be $350,000."

35. Defendant admitted that it had suffered no Loss from receipt of Notice from CorroHealth, Inc. but merely speculated that Defendant would incur a Loss "defending against a Third Party Claim from CorroHealth."

36. On June 8, 2023—i.e., after the date by which Defendant was to fully release any Holdback Amount to Sellers—*Defendant* sued CorroHealth, Inc. in the United States District Court for the Middle District of Florida seeking declaratory relief.

37. Defendant, whether in its August 9, 2022 correspondence or otherwise, never explicitly represented or argued that receipt of Notice from CorroHealth, Inc. or the litigation that *Defendant* initiated thereafter qualified as a circumstance for which it was entitled to seek indemnification from Sellers pursuant to § 7.02 of the Agreement.

38. Defendant has not suffered a Loss arising from a circumstance enumerated in § 7.02 of the Agreement.

39. No Loss was or has ever been "agreed to by the Indemnifying Party"—i.e., Sellers—or "finally adjudicated" as required by § 7.05(a) of the Agreement.

40. Sellers accordingly owe Defendant no indemnification obligations pursuant to §§ 7.02 and 7.05(a) of the Agreement.

41. Since August 9, 2022, according to the financial reports of Defendant, Defendant has nevertheless withheld (1) $305,440.05 in Earn Out Payments ($250,000 of which Defendant misappropriated to settle the lawsuit it initiated against CorroHealth, Inc.) and (2) $108,980 from the Holdback Amount contrary to its contractual obligations to pay and release same, respectively, to Sellers.

42. According to the financial reports of Defendant, the Sales Tax Holdback Amount is currently equal to $54,047 based on the collection of Unpaid Sales Taxes from customers.

43. Pursuant to § 2.09(b) of the Agreement, Defendant is required to release from the Sales Tax Holdback Amount "95% of the total amount of Unpaid Sales Taxes that the Company

is able to [] collect from relevant customers during such fiscal quarter"—i.e., 95% of $54,047, which equals $51,344.65.

44. Contrary to its obligations pursuant to § 2.09(b) of the Agreement, Defendant has not released from the Sales Tax Holdback Amount the $51,344.65 owed to Sellers.

45. In connection with its sales tax collection and compliance efforts, Defendant contracted with Avalara, Inc. for the provision of tax compliance services.

46. Defendant paid Avalara, Inc. $17,229 for its services.

47. Section 2.09(b) of the Agreement does not authorize Defendant to use funds from the Sales Tax Holdback Amount for the reimbursement of costs incurred in connection with Defendant's sales tax collection and compliance efforts.

48. Defendant's CEO, Mohan Plakkot ("Plakkot"), repeatedly assured Sellers that Defendant would not misappropriate or otherwise use any of the Sales Tax Holdback Amount—or any other post-closing consideration—owed to Sellers to pay for Avalara, Inc.'s services.

49. Contrary to § 2.09(b) of the Agreement and Plakkot's assurances, Defendant has withheld from Sellers $17,229 of the Sales Tax Holdback Amount to pay for Avalara, Inc.'s services.

50. In total, Defendant has failed to release at least $68,573.65 from the Sales Tax Holdback Amount to Sellers.

51. Defendant's ongoing failure (1) to pay Sellers $305,440.05 in additional Earn Out Payments and (2) to release the $108,980 Holdback Amount and $68,573.65 Sales Tax Holdback Amount to Sellers has caused Sellers to suffer substantial monetary harm.

52. Plaintiffs and Minority Seller Edsel Pertile executed an Assignment of Claims Agreement, with an effective date of March 11, 2024, whereby the latter assigned to the former

his right to assert any claims arising from Defendant's failure to pay and/or release in full Earn Out Payments, the Holdback Amount, and the Sales Tax Holdback Amount due to him as a Minority Seller with MOU Rights.

53. Plaintiffs and Minority Seller Charles Edwin Condra executed an Assignment of Claims Agreement, with an effective date of March 11, 2024, whereby the latter assigned to the former his right to assert any claims arising from Defendant's failure to pay and/or release in full Earn Out Payments, the Holdback Amount, and the Sales Tax Holdback Amount due to him as a Minority Seller.

54. Plaintiffs accordingly possess the right to pursue on behalf of Minority Seller Edsel Pertile and Minority Seller Charles Edwin Condra any claims arising from Defendant's failure to pay and/or release in full Earn Out Payments, the Holdback Amount, and the Sales Tax Holdback Amount.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

55. Plaintiffs repeat and reallege each of the allegations in the preceding paragraphs previously pleaded as if each were fully set forth herein.

56. The Agreement is a valid and binding obligation.

57. Pursuant to §§ 2.07–2.09, 7.02, and 7.05 of the Agreement, Defendants are required (1) to pay Sellers Earn Out Payments based on ePOWERDOC, Inc.'s ARR Increase post-closing; (2) to release to Sellers the Holdback Amount less any Losses; and (3) to release to Sellers any Sales Tax Holdback Amount based on collections of Unpaid Sales Taxes from customers.

58. ePOWERDOC, Inc. achieved an ARR Increase post-closing that entitles Sellers to the receipt of additional Earn Out Payments totaling at least $305,440.05 pursuant to § 2.08(a)–(b) of the Agreement.

59. No provision of the contract permits Defendant to withhold or delay unilaterally disbursement of the Earn Out Payments.

60. Defendant has failed to disburse to Sellers the $305,440.05 owed them in Earn Out Payments.

61. Defendant has materially breached of § 2.08(a)–(b) of the Agreement.

62. Sellers are required to indemnify Defendant only against Losses arising from circumstances enumerated in § 7.02 of the Agreement pursuant to same.

63. Pursuant to § 7.05(b) of the Agreement, Sellers may satisfy their indemnification obligations, if any, through the Holdback Amount retained by Sellers pursuant to § 2.07 of the Agreement.

64. Pursuant to § 7.05(a) of the Agreement, only after "a Loss is agreed to by the [Sellers] or finally adjudicated" must Sellers satisfy their indemnification obligations, if any, for Losses incurred by Defendant arising from the circumstances enumerated in § 7.02 of the Agreement.

65. Defendant is required to release the full Holdback Amount absent the incursion of any Loss arising from a circumstance enumerated in § 7.02 of the Agreement and an "agree[ment] . . . by the [Sellers]" to or "final[] adjudicat[ion]" of the qualifying Loss.

66. Defendant did not suffer any Loss arising from a circumstance enumerated in § 7.02 of the Agreement.

67. No Loss was ever "agreed to by the [Sellers] or finally adjudicated."

68. Sellers accordingly have no indemnification obligations to Defendant pursuant to §§ 7.02 and 7.05(a) of the Agreement.

69. Despite the absence of any qualified Loss, "agree[ment] . . . by the [Sellers]" to a qualified Loss, or "final[] adjudicat[ion]" of a qualifying Loss, Defendant has failed to release $108,980 from the Holdback Amount to Sellers as required pursuant to § 2.07 of the Agreement.

70. Defendant has materially breached § 2.07 of the Agreement.

71. Pursuant to § 2.09(b) of the Agreement, Defendant is obligated to release "[w]ithin 15 business days of the end of each fiscal quarter following the Closing Date[] the Sales Tax Holdback Amount . . . to the Sellers in an amount equal to 95% of the total amount of Unpaid Sales Taxes that [ePOWERDOC, Inc.] is able to [] collect from its relevant customers during such fiscal quarter."

72. Neither § 2.09 nor any other provision of the Agreement permits Defendant to withhold from the release of the Sales Tax Holdback Amount any expenses incurred by Defendant in connection with Defendant's efforts to ensure tax compliance and collection.

73. Defendant collected $54,047 in Unpaid Sales Taxes from its relevant customers.

74. Defendant has failed to release to Sellers 95% of the $54,047, which equals $51,344.65, from the Sales Tax Holdback despite these collections.

75. Defendant has improperly withheld $17,229 from the Sales Tax Holdback Amount to pay the service fees of Avalara, Inc. based on Defendant's incursion of expenses in connection with its efforts to ensure tax compliance and collection and despite assurances from Plakkot that Defendant would not pass any of the Avalara, Inc. fees on to Sellers via retention of the Sales Tax Holdback Amount.

76. Defendant has therefore materially breached § 2.09 of the Agreement.

77. In total, Sellers have suffered and will continue to suffer harm and monetary damages totaling at least $482,993.70, exclusive of interest, as a proximate and direct result of Defendant's material breaches of the Agreement.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor against Defendant for compensatory damages totaling at least $444,837.20 (after subtracting 7.9% from amounts owed to Sellers to account for the interests of a Minority Seller who is not a party to this action), interest, court costs, specific performance of the Agreement, and any such other relief, whether at law or in equity, as the Court deems just and proper.

Date: March 26, 2024

Respectfully submitted,

*/s/ John P. Passarelli*
John P. Passarelli (No. 16108)
Jonathan I. Baker (No. 27290)
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102
Telephone: (402) 346-6000
E-mail: john.passarelli@kutakrock.com
E-mail: jonathan.baker@kutakrock.com

*Counsel for Wesley S. Grigsby, M.D. and Connie S. Grigsby*